## THE LOTUS No. 2.[1]

### WALKER and others v. THE LOTUS No. 2.

*(District Court, S. D. Alabama. January 27, 1886.)*

1. SHIPS AND SHIPPING—HOME PORT—ENROLLMENT OF VESSEL.
   The word "port," as used in the system of laws relating to the importation of merchandise, has a restricted meaning, and is applicable only to a place for the collection of duties on imports; but when not so used, it has a wider and an entirely different meaning.

2. SAME—"HOME PORT" DEFINED.
   In the latter sense it means, not a port of entry only, but may mean also the place of residence of the owner. The "home port" of a vessel, therefore, may be a port of entry, or it may be a port or place other than a port of entry.

3. SAME—VESSEL, WHERE ENROLLED.
   The location of the custom-house determines the place of enrollment; but when the place of enrollment and of residence of the owners of the vessel

[1] Reported by Theodore M. Etting, Esq., of the Philadelphia bar.

differ, the latter will be considered the "home port," even though the place of enrollment is in another state, if the facts of ownership and residence were known or might have been known to the material-man.

In Admiralty.

*George M. Duskin* and *H. T. Toulmin,* for libelants.

*J. T. Overall* and *D. P. Bestor,* for mortgagees.

BRUCE J.   We are met at the threshold of this case with the question, what was the home port of the vessel the Lotus No. 2?   She was owned by the Columbus Packet Company, a corporation organized under the laws of the state of Mississippi, with its place of business at Columbus, in that state.   This company executed to the Columbus Insurance & Banking Company, of that place, a mortgage upon the vessel to secure a debt which had been contracted to put new machinery and repairs upon the vessel.   The mortgage bears date April 12, 1884, and it was received for record in the collector's office, custom-house, Mobile, April 14, 1884.   The vessel was enrolled in the custom-house, Mobile, and bill of sale from John Doyle of Columbus, Mississippi, to the Columbus Packet Company was received for record, custom-house, Mobile, July 6, 1883.   After the execution and record of the mortgage, the vessel continued to be engaged as a carrier of freight and passengers, navigating the rivers between the cities of Mobile, Alabama, and Columbus, Mississippi, and, while at the port of Mobile, certain parties, in the regular course of trade, and at the request of the master of the steam-boat or other agent, furnished the steam-boat with certain supplies, a statement of which accompanies the libels, and it is alleged that the supplies were necessary for the furnishing and fitting of said steam-boat to enable her to perform her voyage or voyages, and were founded on the credit of the steam-boat, and that these bills have not been paid.   There are a number of these claims for which the steam-boat was libeled in this court, June 3, 1885.   The vessel was sold under the order of the court, and the question arises in the case upon exceptions filed to the report of the clerk of the court, to whom the case was referred, raising the question of the priority of claims upon the fund in the registry of the court.   The mortgagees, the Columbus Insurance & Banking Company, claim that they shall be paid next after the payment of the claims which are strictly maritime, about which no question is made, and the parties who furnished the steam-boat with supplies here in Mobile claim that they are entitled to priority of payment, notwithstanding the fact that these claims accrued after the execution and record of the mortgage in the custom-house at the port of Mobile. The claim of priority of payment on the part of the mortgagees is based upon the proposition that the port of Mobile is the home port of the Lotus No. 2, and that, therefore, the supplies were furnished, not on the credit of the vessel, but on the credit of her owners, and therefore they, the mortgagees, are entitled to priority of payment. The question, then, is, where was the home port of this vessel, and

how or by what rule is the home port of a vessel to be defined and determined?

The words themselves, "home port," indicate that it is where she belongs or is owned. The statutes, and decisions of courts, on the subject speak of where she belongs, sometimes where she is built, where she is enrolled and licensed, and perhaps more often where her owners reside. It is claimed here that the home port of the vessel in question, the Lotus No. 2, was Columbus, Mississippi, because she was owned there by a company incorporated under the laws of the state of Mississippi; that the stockholders of that company resided there; and that the vessel had, in compliance with an act of congress, the words "The Lotus No. 2, of Columbus, Miss.," painted upon her stern. It is claimed, however, that in legal contemplation, and under the laws of congress upon the subject of the registration and enrollment of vessels, that Mobile was her home port, for that she was enrolled there in the office of the collector of customs of that port, and that Columbus, Mississippi, is within the collection district of which Mobile is the port of entry. Section 4141 of the Revised Statutes of the United States provides:

"Every vessel, except as hereinafter provided, shall be registered by the collector of that collection district which includes the port to which such vessel shall belong at the time of her registry, which port shall be deemed to be that at or nearest to which the owner, if there be but one, or, if more than one, the husband or acting and managing owner of such vessel, usually resides."

The law as to the enrollment of vessels is the same under section 4312 of the Revised Statutes of the United States as it is in reference to the registry of vessels, and it is not questioned that the Lotus No. 2 was properly enrolled in the office of the collector of customs of the port of Mobile. The statute, however, is in relation to the registry (enrollment, in this case) of vessels, and provides where such registry or enrollment shall be made; but it certainly does not provide, in words at least, that the place where such registry and enrollment shall be made is by that single test to be held and deemed her home port. The words of the statute seem to imply that the port to which the vessel shall belong at the time of her registry may be other than the port at which she is to be registered or enrolled, and the port at which she is to be registered or enrolled is to be deemed to be that at or nearest to which the owner of such vessel usually resides.

It is said Columbus, in the state of Mississippi, is not a port at all, because it is not a port established by law for the entry of merchandise through a custom-house, and the proposition is that in contemplation of law only such port where a custom-house is located can be the home port of a vessel. In the system of laws enacted by congress concerning the subject of the importation of merchandise to be entered in custom-houses established by law, the word "port" has a statutory definition, and section 2767 of the Revised Statutes of the

United States, tit. 24, c. 4, under the head of "Entry of Merchandise," provides: "The word 'port,' as used in this title, may include any place from which merchandise can be shipped for importation, or at which merchandise can be imported;" so that when the word "port" is used in the statute as to the importation of merchandise, it means a place for such importation, but when not so used, it may have and does have a wider and more general signification.

Can it be maintained that the word "port," as used and defined by congress in title 34, which is in reference to the collection of duties on imports, and chapter 4 under that title, which is as to the entry of merchandise, must be held to have been used in the same restricted sense in title 48, which is in reference to the regulation of commerce and navigation, and chapter 1 under that title, as to the registry and recording of vessels? The two subjects are separate and distinct,—so treated in the statutes of the United States,—and while the word "port" has a restricted meaning in reference to the entry of merchandise for the collection of duties on imports, for a manifest reason, can it be held that it has the same restricted meaning in reference to an entirely different subject, the registry of vessels, the vehicles of commerce? In the former case it means a port of entry; in the latter, it is used in a general sense; and congress has not changed the law of the admiralty, that the home port of a vessel is the port or the place where she belongs and where her owners reside. The act of congress of June 26, 1884, known as the "Dingley Bill," throws some light on the subject. Section 21 provides that the word "port," as used in sections 4178 and 4334 of the Revised Statutes, in reference to painting the name and port of every registered or licensed vessel on the stern of such vessel, shall be construed to mean either the port where the vessel is registered, or the place in the same district where the vessel was built, or where one or more of her owners reside. The conclusion seems clear that the word "port," in the statute under consideration, is not to be held to mean a port of entry only, but may mean the place where the owners of the vessel reside; and the home port of a vessel may be a port of entry, or it may be a port or place other than a port of entry.

It is claimed that the supreme court of the United States has settled this question in the case of *Morgan* v. *Parham*, 16 Wall. 476. In that case the court said:

"It is the opinion of the court that the state of Alabama [for it was a case from this court] had no jurisdiction over that vessel for the purpose of taxation, for the reason that it had not become incorporated into the personal property of the state, but was there temporarily only, and that it was engaged in lawful commerce between the states, with its *situs* at the home port of New York, where it belonged, and where its owner was liable to be taxed for its value."

There was no question arising in that case such as there is here, for there the vessel belonged and her owners resided at the port of

New York, where she was registered, and which was therefore her home port; and, while there are expressions in the opinion which might seem to imply that the place of registry is always to be deemed the home port of the vessel, yet that was not the point decided, and the court does not overrule or modify the former case of *St. Louis* v. *Ferry Co.*, 11 Wall. 431, which is more in point, where the court say:

"The boats were enrolled at the city of St. Louis, but that throws no light upon the subject of our inquiry. The act of 1789, § 2, and the act of 1792, § 3, require every vessel to be registered in the district to which she belongs, and the fourth section of the former act, and the third section of the latter, declare that her home port shall be that at or near which her owner resides. The solution of the question where her home port is, when it arises, depends wholly upon the locality of her owner's residence, and not upon the place of her enrollment."

In both of these cases the question was, where is a vessel, engaged in commerce, liable to taxation under state and municipal authority? And the court hold that it is not where she may have been enrolled, and in the former case the court, at page 476 of the opinion, say:

"There was nothing in her enrollment in the port of Mobile that affected her registry in New York, or her ownership in that place, or that tended to subject her to the taxation of the state of Alabama."

These cases are certainly not conclusive of the proposition in support of which they are cited, if, indeed, they do not support the contrary doctrine.

In the case of *The Jennie B. Gilkey*, (circuit court, D. Massachusetts,) 19 Fed. Rep. 127, LOWELL, J., says: "It has often been decided that the place of residence of the owners is to be considered the home port, even when the registration is in another state, if the facts of ownership and residence were known or might have been known to the material-men;" citing authorities. The same view is taken by Judge BROWN, of the Southern district of New York, in the case of *The Charlotte Vanderbilt*, 19 Fed. Rep. 219.

I will not say that in no case and in no sense will registry or enrollment, under the laws of congress, carry evidence presumptive that the port where a vessel is registered and enrolled is her home port. On the contrary, when a vessel is away from home, in a foreign state and country, the port of her registry or enrollment will be presumed to be her home port, (see Desty, Shipp. & Adm., and a line of authorities there cited;) but that such a presumption is conclusive, as against supply and material-men in a case like the one under consideration, is a proposition which is not sustained either by reason or authority. Here the steam-boat the Lotus No. 2 appeared at the port of Mobile, hailing from the port of Columbus, in the state of Mississippi. Her enrollment was here, in the office of the collector of customs of the port of Mobile, which, on examination, would show where she belonged, and that her owners resided, not at Mobile, but at Columbus, Mississippi. While here, in this port, on the order of her master, she is furnished by supply and material-men presumably

upon her credit, and as to such claims, under such circumstances, the steam-boat was not in her home port, although enrolled here, and therefore a maritime lien exists for such supplies, which are entitled to priority of payment over the mortgagees, the Columbus Insurance & Banking Company; and it is so ordered.